# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: __December 29, 2015__

**NO. 33,950**

**ANN BRANNOCK, DANIEL M. MOWERY**
**and MARSHA J. MOWERY,**

      Plaintiffs-Appellees,

v.

**THE LOTUS FUND, CHRISTINE HOUGH**
**SMITH, and CHRISTOPHER SMITH,**

      Defendants-Appellants,

and

**DOUGLAS COOMBS and COLLEEN COOMBS**
**and EUGENE HANDS and MARIA HANDS,**

      Voluntary Defendants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alan M. Malott, District Judge**

Ronald T. Taylor
Albuquerque, NM

for Appellees

Michael L. Danoff & Associates, P.C.
Michael L. Danoff
Ryan P. Danoff
Albuquerque, NM

for Appellants

**OPINION**

**BUSTAMANTE, Judge.**

{1} Defendants The Lotus Fund (LF), Christine Hough Smith, and Christopher Smith appeal from the district court's findings of facts and conclusions of law entering judgment[1] on behalf of Plaintiffs Ann Brannock, Daniel M. Mowery, and Marsha J. Mowery. On appeal, Defendants raise both issue and claim preclusion arguments and contend that, in any event, the district court erred in concluding that Plaintiffs proved the elements of prescriptive easement and easement by necessity. Concluding that the prior case does not have preclusive effect over the present case

---

[1]We initially note that we do not typically consider the district court's findings of fact and conclusions of law a "final order" for purposes of filing an appeal. *See Curbello v. Vaughn*, 1966-NMSC-179, ¶¶ 1-3, 76 N.M. 687, 417 P.2d 881 (stating that, when the district court had entered findings and conclusions, but had not entered an order or judgment carrying out the findings and conclusions, no final order had been entered in the case for purposes of appeal). Here, however, the district court's findings and conclusions serve as the final order or judgment because they resolve all matters to the fullest extent possible and because they contain decretal language that carries the findings and conclusions into effect. *See Floyd v. Towndrow*, 1944-NMSC-052, ¶ 4, 48 N.M. 444, 152 P.2d 391 (stating that "[t]he general rule recognized by the courts of the United States and by the courts of most, if not all, of the states, is that no judgment or decree will be regarded as final, within the meaning of the statutes in reference to appeals, unless all the issues of law and of fact necessary to be determined were determined, and the case completely disposed of, so far as the court had power to dispose of it" (internal quotation marks and citation omitted)); *see also Khalsa v. Levinson*, 1998-NMCA-110, ¶ 13, 125 N.M. 680, 964 P.2d 844 (providing that an order is final if it includes decretal language that carries the decision into effect). In satisfaction of the required decretal language, the final paragraph of the district court's subsequent findings and conclusions states that "[i]t is therefore Ordered that Judgment shall issue in favor of Plaintiffs consistent with these Findings and Conclusions." Therefore, we view the district court's findings and conclusions as the final order of the court.

and that substantial evidence supports the district court's findings and conclusions that Plaintiffs proved the elements for prescriptive easement, we affirm.

**I.      BACKGROUND**

{2}      This appeal involves litigation over a disputed access to property. In order to best understand the facts and legal issues in the present case, we will first explain the legal posture that led to the present case. Prior to the present case, a separate case (the Coombs case) was initiated by Douglas M. Coombs and Colleen E. Coombs (together, the Coombses) against The Lotus Fund Limited Partnership (LFLP), an affiliate or otherwise related company to one of the present Defendants, The Lotus Fund. The Coombses and Defendants/LFLP own property adjacent to one another, which properties are separated by a twenty-five-foot dedicated easement (the dedicated easement) that is entirely on the Coombses' property. Notwithstanding this dedicated easement, the Coombses alleged that they and others used a path to access properties owned by the Coombses, Eugene and Maria Hands (the Hands), and present Plaintiffs, which path was partially on the dedicated easement on the Coombses' property and partially on Defendants'/LFLP's property. After a dispute arose between Defendants/LFLP and the Coombses regarding use of the disputed access, the Coombses filed a complaint for declaratory judgment and injunction against LFLP.

{3}     In the Coombs case, Judge Brickhouse concluded that

> [a]s a matter of law there [are] no prescriptive easement rights for [the Coombses] because the required elements, which are usage by the general public continued for the length of time necessary to create a right of prescription if the use had been by an individual, provided that such usage is open, uninterrupted, peaceable, notorious, adverse, under a claim of right, and continued for a period of ten years with the knowledge, or imputed knowledge of the owner, were not proven at trial.

By this, Judge Brickhouse meant either that insufficient evidence was presented on this claim—perhaps because the Coombses instead elected to pursue an ownership argument—or that the Coombses failed to prove their prescriptive easement rights or public prescriptive easement rights despite their efforts to do so. In any event, the conclusion of law, in significant part, states that there are no prescriptive easement rights *for the plaintiffs in the Coombs case*, as opposed to stating that prescriptive easement rights on the disputed access could never be proven by any other party against Defendants/LFLP.

{4}     Plaintiffs in the present case, who own/have owned property to the south of the Coombses (non-adjacent) and the Hands (adjacent), thereafter brought a case against present Defendants for prescriptive easement, easement by necessity, and permanent restraining order, seeking court verification of their easement over the same disputed roadway that was litigated in the Coombs case. The Coombses and the Hands were additionally named as "voluntary defendants" in the present case. Both parties filed

motions for summary judgment, and the district court denied both motions. In the order denying summary judgment, the district court took judicial notice of the Coombs case; noted that the plaintiffs in the Coombs case are not the same as Plaintiffs in the present case or in privity with them; and found that the Coombs case determined legal ownership of land, whereas the present case deals with the right to use that land. The case therefore proceeded to trial.

{5}     After a trial on the merits, the district court filed findings of fact and conclusions of law, granting judgment in favor of Plaintiffs. The district court reiterated that the ownership rights determined in the Coombs case did not have preclusive effect on the usage rights as asserted by Plaintiffs in the present matter and concluded that Plaintiffs had proved the elements of prescriptive easement and easement by necessity. Defendants appeal.

## II.    DISCUSSION

{6}     On appeal, Defendants raise both issue and claim preclusion arguments and additionally contend that, in any event, the district court erred in concluding that Plaintiffs proved the elements of prescriptive easement and easement by necessity. We first address Defendants' preclusion arguments and, concluding that the present case is not precluded by the Coombs case, then proceed to the merits of the easement issues.

**A.    Collateral Estoppel**

{7}    Defendants argue that "the disputed easement access" issue is precluded from litigation in the present case based on the doctrine of collateral estoppel. We review a decision by the district court to apply or not apply the doctrine of collateral estoppel for an abuse of discretion. *See Shovelin v. Cent. N.M. Elec. Coop., Inc.*, 1993-NMSC-015, ¶ 10, 115 N.M. 293, 850 P.2d 996. "The doctrine of collateral estoppel fosters judicial economy by preventing the relitigation of ultimate facts or issues actually and necessarily decided in a prior suit." *Id.* (internal quotation marks and citation omitted). The party invoking the doctrine

> must demonstrate that (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation.

*Id.* "If the movant introduces sufficient evidence to meet *all elements* of this test, the trial court must then determine whether the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior litigation." *Id.* (emphasis added). In this case, Defendants have failed to satisfy several of the requirements.

{8}    With regard to the first element, the plaintiffs in the prior litigation were the Coombses. In the present case, Plaintiffs are Ann Brannock, Daniel M. Mowery, and

5

Marsha J. Mowery. Although the Coombses and the Lotus Fund (or an affiliate thereof) are defendants in both cases, *Plaintiffs* in the present case are the parties Defendants are seeking to estop and are thus the parties to whom the doctrine would apply. *See id.* (identifying the first element as "*the party to be estopped* was a party to the prior proceeding" (emphasis added)). Plaintiffs were not parties to the prior litigation. As the movant must introduce *all elements* of the test in order for the district court to even consider "whether the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior litigation[,]" *see id.*, Defendants have failed to show that the district court abused its discretion in determining that Plaintiffs were not estopped from proceeding with their claims of easement by prescription and by necessity.

{9}     Defendants nevertheless argue that Plaintiffs were "in privity with" the plaintiffs in the prior action because there was a "substantial identity between the issues in controversy and . . . the parties in the two actions are really and substantially in interest the same." *Deflon v. Sawyers*, 2006-NMSC-025, ¶ 4, 139 N.M. 637, 137 P.3d 577; *see also City of Sunland Park v. Macias*, 2003-NMCA-098, ¶ 10, 134 N.M. 216, 75 P.3d 816 (stating that the doctrine of collateral estoppel requires, *inter alia*, that "the parties in the current action were the same or in privity with the parties in the prior action"). Specifically, Defendants contend that the two sets of plaintiffs are

6

in privity with one another because Plaintiffs were aware of the prior case; many of the witnesses were the same, including Mr. Mowery himself testifying in the prior case; counsel for plaintiffs was the same in both cases; Judge Brickhouse already determined there was not a prescriptive easement on the contested roadway; the experts were the same in both cases and they dealt with the same evidence; and there was/is a concurrent relationship by the two sets of plaintiffs to the same property involving the disputed access. Defendants' argument is unavailing.

{10}     As our Supreme Court explained in *Deflon*,

> [t]here is no definition of "privity" which can be automatically applied in all cases involving the doctrines of res judicata and collateral estoppel. Thus, each case must be carefully examined to determine whether the circumstances require its application. . . . Privity requires, at a minimum, a substantial identity between the issues in controversy and showing that the parties in the two actions are really and substantially in interest the same.

2006-NMSC-025, ¶ 4 (internal quotation marks and citation omitted). "[P]arties have been found in privity where they represent the same legal right or where they have a mutual or successive relationship to the same rights of property." *Id.* (internal quotation marks and citation omitted).

{11}     In the present case, Defendants contend that "there was evidence of the concurrent relationships to the same property involving the disputed access, thus privity was established." Defendants appear to be arguing that, because the

7

Coombses, the Hands, and present Plaintiffs are all neighbors on the west side of the disputed access road and have all used the disputed access road to access their individual properties and each others' properties, they collectively share a single opportunity to claim a right to prescriptive easement over the disputed access. Defendants provide no authority for this contention, other than citation to *Deflon*'s explanation that "[p]rivity has been held to exist in the following relationships: concurrent relationship to the same property right (i.e. trustee and beneficiary); successive relationship to the same property or right (i.e. seller or buyer); or representation of the interests of the same person." *Id.* (internal quotation marks and citation omitted). However, Defendants' implication that the Coombses and Plaintiffs are in legal privity with one another because they both dispute their right to access their separate properties with the same Defendants (or affiliates thereof), simply because the access road is the same, is unsupported.

{12} Indeed, the fact that the Coombses, the Hands, and present Plaintiffs are all neighbors who all use the disputed access road does not mean that they have a concurrent relationship to the same property right, *see id.*, because they all own separate properties, require individual access to their separate properties, and each have individual rights with regard to access to their own separate properties. *See Hill v. State Highway Comm'n*, 1973-NMSC-114, ¶ 5, 85 N.M. 689, 516 P.2d 199 ("This

8

Court has recognized that the right of access is a property right[.]"); *State ex rel. State Highway Comm'n v. Chavez*, 1966-NMSC-222, ¶ 5, 77 N.M. 104, 419 P.2d 759 ("There can be no question that the right to access is a property right[.]"). Likewise, the fact that the Coombses, the Hands, and present Plaintiffs are all neighbors who all use the disputed access road does not mean that they represent the interests of the same person, *see Deflon*, 2006-NMSC-025, ¶ 4; indeed, they are all separate persons with their own separate properties in different locations with different access points.

{13}     Further, Defendants have presented no evidence that would indicate that the Coombses' right to access their own property via the disputed roadway is somehow the same as Plaintiffs' right to access their non-adjacent property farther south via the disputed access, such that the parties' rights to access their separate properties can be said to be a concurrent relationship to the same property right or a representation of the interests of the same person. *See id.* Similarly, Defendants have presented no argument or evidence regarding any successive relationship to the property or right between the Coombses, the Hands, and present Plaintiffs, aside from the fact that the Mowerys have sold their property to Ms. Brannock, and the Mowerys and Ms. Brannock are all presently seeking the same right in the present lawsuit, so there is no support for a contention that there is legal privity between the Coombses and Plaintiffs based on a successive relationship to the same property or right. *See id.*

{14} Additionally, as Defendants have presented no authority to support a contention that neighbors who use the same disputed property or access road to access or exit their separate properties are in legal privity with one another, and as we are aware of no such authority, we assume no such authority exists. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). In fact, such a conclusion would be contrary to the rights of property owners to access their own property. *See Hill*, 1973-NMSC-114, ¶ 5 ("This Court has recognized that the right of access is a property right[.]"); *Chavez*, 1966-NMSC-222, ¶ 5 ("There can be no question that the right to access is a property right[.]"). We therefore conclude, as a matter of law, that the Coombses and Plaintiffs—non-adjacent neighbors who use the same roadway to access and exit their separate properties—are not in legal privity with one another simply because they use the same roadway and have sought to enforce their right to do so against the same Defendants.

{15} Moreover, Defendants have presented no authority that states that witnesses in one case cannot maintain their own legal action against the defendants of the first action, that such witnesses cannot secure the same attorney as was used in the first action, or that such witnesses cannot introduce the same testimony or experts as in the first case to prove their own case, and after diligent search we have not uncovered any

such authority. Similarly, we are aware of no law and Defendants have not presented us with any law that indicates that such witnesses would be in legal privity with the plaintiffs of the first action as a result of such witnesses' knowledge of and participation in the first action. Additionally, given that the Coombs case dealt with whether the *Coombses* had a prescriptive right to the disputed access road, and the present case deals with whether *Plaintiffs* have a prescriptive right to the disputed access road, as indicated above, there is no reason to conclude that the parties have a concurrent relationship to the same property right or a representation of the interests of the same person or are otherwise in legal privity with one another. *See Deflon*, 2006-NMSC-025, ¶ 4.

{16}     We therefore conclude that Plaintiffs are not in legal privity with the Coombses by virtue of Plaintiffs' knowledge of or participation in the Coombs case dealing with the *Coombses' interest* in the disputed access road; by virtue of Plaintiffs' hiring of the Coombses' lawyer; or by virtue of the same evidence, witnesses, or experts being used in Plaintiffs' case to establish *Plaintiffs' interests* in the disputed access road. Accordingly, Defendants have failed to establish the first requirement needed to apply the doctrine of collateral estoppel—the party to be estopped was the same as or in privity with a party in the prior litigation. *See Shovelin*, 1993-NMSC-015, ¶ 10; *City of Sunland Park*, 2003-NMCA-098, ¶ 10.

11

{17} Furthermore, Defendants have failed to satisfy the third and fourth requirements needed to apply collateral estoppel—that "the issue was actually litigated in the prior adjudication" and that the issue was "necessarily determined in the prior litigation." *Shovelin*, 1993-NMSC-015, ¶ 10. As discussed above, the issues in the Coombs case dealt with whether the *Coombses* had established a prescriptive easement over the disputed access road; the issues in the present case deal with whether *Plaintiffs* have established a prescriptive easement over the disputed access road. Additionally, in the Coombs case, Judge Brickhouse specifically concluded that "[a]s a matter of law there [are] no prescriptive easement rights *for Plaintiffs*"—i.e., the Coombses. (Emphasis added.) She did not, however, conclude that there are no prescriptive easement rights for any of the witnesses in the Coombs case or for other neighbors in the vicinity who use the disputed access. As such, the present issues were neither "actually litigated" in the Coombs case, nor "necessarily determined in the prior litigation." *See id.* Therefore, Defendants have failed to satisfy at least three of the four elements required for collateral estoppel with regard to Plaintiffs' prescriptive easement claim.

{18} Finally, Defendants argue that, because the district court in the Coombs case ruled that there was a dedicated easement and the district court in the present case likewise ruled that there is a dedicated easement, "that would trump any claim for an

12

easement by necessity or prescriptive easement." In other words, Defendants appear to be arguing that, because both courts have found a dedicated easement, present Plaintiffs' easement by necessity claim is somehow collaterally estopped. Given that Defendants have presented no argument or evidence that any of the issues involving Plaintiffs' easement by necessity claim were raised, considered, argued, or determined in the Coombs case, we will not consider this aspect of Defendants' argument. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments."); *see also Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to entertain a cursory argument that included no explanation of the party's argument and no facts that would allow the Court to evaluate the claim). Indeed, even if the district court in the Coombs case "adjudicated the issue and held that there was a [dedicated] easement and it was located entirely on the [Coombses'] property," such a ruling does not address the issue of whether Plaintiffs' use of the disputed access road is reasonably necessary, which is a required element of an easement by necessity claim, as discussed more fully below. *See Los Vigiles Land Grant v. Rebar Haygood Ranch, LLC*, 2014-NMCA-017, ¶ 28, 317 P.3d 842 (stating that an easement by necessity claim requires, *inter alia*, "that a

13

reasonable necessity existed for such right of way" (internal quotation marks and citation omitted)).

{19} Accordingly, we conclude that the district court did not abuse its discretion in determining that Plaintiffs are not collaterally estopped from proceeding with the issues related to their claims of easement by prescription and by necessity. *See Shovelin*, 1993-NMSC-015, ¶ 10 (setting forth the requirements for establishing collateral estoppel).

**B.     Res Judicata**

{20} Similar to their collateral estoppel argument, Defendants argue that the relief sought by Plaintiffs with regard to Plaintiffs' claim for easement by prescription/necessity is precluded from relitigation by *res judicata*, or claim preclusion. We review a district court's determination concerning a res judicata claim de novo. *Roybal v. Lujan de la Fuente*, 2009-NMCA-114, ¶ 23, 147 N.M. 193, 218 P.3d 879.

{21} "Claim preclusion, or res judicata, precludes a subsequent action involving the same claim or cause of action." *Id.* (internal quotation marks and citation omitted).

> In order to bar a lawsuit under the doctrine of res judicata, four elements must be met: (1) identity of parties or privies, (2) identity of capacity or character of persons for or against whom the claim is made, (3) the same cause of action, and (4) the same subject matter.

*Id.* (alterations, internal quotation marks, and citation omitted). "The party seeking to bar the claim has the burden of establishing res judicata[.]" *Id.* (internal quotation marks and citation omitted). In this case, Defendants have failed to meet several elements.

{22} For the same reasons discussed at length above, the identity of the parties or privies in the Coombs case is not the same as in the present case. *See id.* Likewise, for the same reasons discussed at length above, the cause of action in the Coombs case—regarding the *Coombses*' right to prescriptive easement over the disputed access road—is different from the cause of action in the present case—regarding *Plaintiffs*' right to prescriptive easement over the disputed access road. Further, to the extent Defendants intend to raise the same argument regarding Plaintiffs' easement by necessity claim with regard to *res judicata* as they do for collateral estoppel, our responses remain the same.

{23} Accordingly, we conclude that the district court did not err in determining that the doctrine of res judicata does not apply and that Plaintiffs are not barred from proceeding with their claims of easement by prescription and by necessity. *See id.* We therefore turn to the merits of Defendants' easement arguments.

15

## C.    Prescriptive Easement

{24}    Defendants argue that the district court erred in finding a prescriptive easement and that Plaintiffs failed to prove all of the elements required for prescriptive easement. We initially note that the district court appears to have been confused about the distinction between easement by prescription and easement by necessity. Although they are both easements, they are different types of easements with different elements of proof. *See, e.g., Los Vigiles Land Grant*, 2014-NMCA-017, ¶¶ 4-5 (affirming the district court's finding that the plaintiffs had an easement by implication and necessity, but reversing the district court's grant of easement by prescription). Nevertheless, as discussed below, the district court did not err in finding that both types of easement existed under the facts of the present case.

{25}    "On appeal, we decide whether substantial evidence supports the district court's findings and whether these findings support the conclusions that [each of] the elements required to establish [an] . . . easement by prescription were not proved by clear and convincing evidence." *Algermissen v. Sutin*, 2003-NMSC-001, ¶ 9, 133 N.M. 50, 61 P.3d 176. "For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with the abiding conviction that the evidence is true." *Varbel v. Sandia Auto Elec.*, 1999-NMCA-112, ¶ 18, 128 N.M. 7, 988 P.2d 317

16

(internal quotation marks and citation omitted). "The function of the appellate court is to view the evidence in the light most favorable to the prevailing party, and to determine therefrom if the mind of the fact[ ]finder could properly have reached an abiding conviction as to the truth of the facts found." *Ledbetter v. Webb*, 1985-NMSC-112, ¶ 21, 103 N.M. 597, 711 P.2d 874 (emphasis, alteration, internal quotation marks, and citation omitted); *see Tartaglia v. Hodges*, 2000-NMCA-080, ¶ 57, 129 N.M. 497, 10 P.3d 176 ("Even where the standard of proof is clear and convincing evidence, it is for the fact[ ]finder and not the appellate courts to weigh conflicting evidence and arrive at the truth." (internal quotation marks and citation omitted)). "We defer to the trial court, not because it is convenient, but because the trial court is in a better position than we are to make findings of fact and also because that is one of the responsibilities given to trial courts rather than appellate courts. Our responsibility is to review for reversible error." *In re R.W.*, 1989-NMCA-008, ¶ 7, 108 N.M. 332, 772 P.2d 366.

**{26}** In order to be successful in their claim that an easement by prescription exists, Plaintiffs had to satisfy the requirements for prescriptive easement. *See Algermissen*, 2003-NMSC-001, ¶ 9. Specifically, "an easement by prescription is created by an adverse use of land, that is open *or* notorious, and continued without effective interruption for the prescriptive period (of ten years)." *Id.* ¶ 10 (emphasis added). In

17

the present case, the district court found that Plaintiffs established the elements of easement by prescription, including that Plaintiffs utilized the access road at issue "continuously in an open, notorious, and adverse fashion without permission since they purchased their land . . . in 1979." The district court also found that there was testimony that, since 1979, Plaintiffs "witnessed others using the access road continuously, in an open, notorious, and adverse fashion without permission."

**1.    Adverse Use**

{27}    We must first determine whether Plaintiffs established by clear and convincing evidence that their use of the disputed access road was adverse. *See id.* ¶ 12. Defendants allege, *inter alia*, that "there was no evidence or testimony at trial from [Plaintiffs] to show that any use was adverse." In *Algermissen*, the Court explained that "[a]dversity is a general concept that simply means a person holds an interest opposed or contrary to that of someone else." *Id.* ¶ 11 (internal quotation marks and citation omitted). "An adverse use is a use made without the consent of the landowner." *Id.* Because in many circumstances adversity can be difficult to prove, "a series of presumptions are used." *Id.*

> For example, a use that has its inception in permission will be presumed to continue to be permissive, until a distinct and positive assertion of a right hostile to the owner is brought home to him by words or acts. Similarly, if all of the other elements of a prescriptive easement claim are satisfied, the use is presumed to be adverse in the absence of proof of express permission.

18

*Id.* (internal quotation marks and citation omitted).

{28} At trial, Mr. Mowery testified that he never sought permission to use the disputed access road and that he did not believe such permission was required. Mr. Mowery likewise testified that the Gonnsens—owners of the Coombs property prior to the Coombs—never indicated that they needed permission to use the disputed access road. Similarly, Mrs. Mowery testified that she never had to obtain permission from anyone to use the disputed access road. Ms. Brannock, who currently resides at the end of the disputed access road, testified that the Smiths did not mention her use of the access road when she spoke with them about construction concerns and that she never asked anyone permission to use the access road. In other words, Plaintiffs all testified that they believed that permission to use the disputed access was not necessary and that they never sought such permission.

{29} Moreover, Mr. Smith testified that when the Smiths moved into the property, he was aware of no road and/or the road was not in existence; that he was puzzled about the testimony claiming that the road has been in existence since the 1960s because the aerial photographs show brush on the disputed access; and that his understanding was that the road had not been used when he purchased the property in 1998—in other words, Mr. Smith indicated by his testimony that he never gave permission to the Mowerys or Ms. Brannock or any other party to use the disputed

19

access road. In fact, Mr. Smith even testified that he "was not concerned with people trespassing on my property," indicating his view that the Mowerys' and Ms. Brannock's use was trespass, and not permissive. Additionally, the only communication Defendants had with either the Mowerys or Ms. Brannock regarding their use of the disputed access was when Mr. Smith conversed with Ms. Brannock, informing her of the Coombs litigation, and advising her that it would be beneficial to wait and see how it all works out in court, followed by a letter from Mr. Smith's attorney to Ms. Brannock, stating that the Smiths objected to Ms. Brannock using the access in any way. Thus, substantial evidence exists to support the district court's finding by clear and convincing evidence that the use was adverse—i.e., "made without the consent of the landowner." *Algermissen*, 2003-NMSC-001, ¶ 11; *see also id.* ¶ 12 ("the fact finder should presume adversity if all of the other elements of the claim are satisfied, and there is no evidence of express permission"). Although there may have been evidence presented to the contrary, "we will not reweigh the evidence nor substitute our judgment for that of the fact finder." *Las Cruces Prof'l Fire Fighters & Int'l Ass'n of Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177; *see also In re R.W.*, 1989-NMCA-008, ¶ 7 ("Even in a case involving issues that must be established by clear and convincing evidence, it

is for the finder of fact, and not for reviewing courts, to weigh conflicting evidence and decide where the truth lies.").

**2.      Open or Notorious Use**

{30}      We must next determine whether Plaintiffs established by clear and convincing evidence that their use of the access road was open *or* notorious. *See Algermissen*, 2003-NMSC-001, ¶ 9. Defendants allege, *inter alia*, that the use was not open or notorious because the use was infrequent, the road was not obvious or visible to a reasonable person based on aerial photographs and Mr. Smith's testimony, and there was no reason to use the disputed access until after Ms. Brannock built her home in 2010. Our Supreme Court clarified that the requirement that the prescriptive use be open or notorious is the same as the elements previously "labeled as knowledge and imputed knowledge." *Id.* ¶ 18. Indeed, "[o]pen or notorious use is the only way that knowledge can be imputed to the landowner." *Id.* "Imputed knowledge is synonymous with constructive notice, a phrase that means that the use of the property must have been so obvious that the landowners should have known about it, had they been reasonably diligent." *Id.*

> The use must simply be *either* open *or* notorious. To be open, the use must be visible or apparent. This has long been the law of this State. To be notorious, the claimant's use of the property must be either actually known to the owner or widely known in the neighborhood. This, also, is consistent with our cases.

*Id.* ¶ 19 (emphasis added) (internal quotation marks and citations omitted). Defendants argue that there was no way to establish open or notorious use because the access was covered in trees and brush until 2010 and because the access was "pretty rough" as there was some washout. Defendants further contend that Mr. Smith never saw the Mowerys or Ms. Brannock use the access in dispute; the access was not a road because there was no street and no grading; and the county does not recognize the access as a road in any way, so there was no evidence that the use was open or notorious. However, contrary to Defendants' allegations, there was substantial evidence that Plaintiffs' use was both open and notorious.

{31}     Mr. Mowery testified that he used the disputed access road "a lot" since 1979 when he purchased acreage at the end of the road and, during the thirty-one years from 1979 until 2010 when he sold the property to Ms. Brannock, he used the road as the access to the property and for hiking, driving, walking, or riding a motorcycle at least once a month. Mr. Mowery further testified that many people used the disputed road to access their properties, including he and his wife, the Gonnsens, the Coombses, and the Hands, as well as other people—firewood people, pinecone pickers, construction workers, girl scout troops—for various reasons including for visual inspections, firewood, pinecones, picnics, etc. Similarly, Mrs. Mowery testified that she frequently walked on the disputed access road for over thirty years, mostly

22

to take walks alone and with her children. Mrs. Mowery also testified that, after they moved away, she still occasionally—once or twice a month—went back and used the access road to check on the house or to simply walk the road. Ms. Brannock likewise testified that, since she purchased the property in 2009-2010, she has been using the road, as it currently exists, by driving and walking down the road. Ms. Brannock further testified that she uses the access road quite often—several times a week, up to many times a day, depending on whether she was in the area or felt like going there.

{32}    Additionally, specifically regarding whether the use of the road was visible or apparent, various individuals testified that the disputed access road was clearly visible from Sangre de Cristo, Woodbriar, and Defendants'/LFLP's property. Mr. Mowery testified that the road and vehicles on the road are visible from the main street, Sangre de Cristo, all the way to the corner at Woodbriar, where the Smiths live. Mr. Mowery testified that there are trees, but that the road is visible anyway. Mrs. Mowery likewise testified that you could see the Smith property from the disputed access road, that she saw people using the access road, assuming it was neighbors, and that she could see Defendants' property from the disputed access road when she walked on it. Mrs. Mowery also testified that she could see the road and vehicles on the road from Sangre de Cristo. Even Mr. Smith testified that he could see the surveyor and

23

various vehicles on the road from Defendants' property/house. In fact, Mr. Smith even admitted that footpaths can be seen on the access road in an un-admitted aerial photograph from 2008; that he had seen people walk on the access road; and that even the Smiths used the access road, including with logging trucks, from 1998 when they bought the property through 2003.

{33} Moreover, the district court asserted that its "review of the photographs . . . does not support Defendants' position. In each of the photos, taken as early as 1996, the access road as utilized is visible and easily discerned." Thus, substantial evidence exists to support the district court's finding by clear and convincing evidence that the use was open or notorious—i.e., "visible or apparent . . . [*or*] either actually known to the owner or widely known in the neighborhood." *Id.* ¶¶ 9, 19. Again, although there may have been evidence presented to the contrary, "we will not reweigh the evidence nor substitute our judgment for that of the fact finder." *Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12; *see In re R.W.*, 1989-NMCA-008, ¶ 7 ("Even in a case involving issues that must be established by clear and convincing evidence, it is for the finder of fact, and not for reviewing courts, to weigh conflicting evidence and decide where the truth lies.").

24

### 3. Continuous and Uninterrupted Use For the Prescriptive Period

{34} Finally, we must determine whether Plaintiffs established by clear and convincing evidence that their use "continued without effective interruption for the prescriptive period (of ten years)." *Algermissen*, 2003-NMSC-001, ¶ 10. Defendants allege, *inter alia*, that Plaintiffs did not show continuous use because the only evidence of use was occasional, limited, and rare. In order to prevail in their claim, Plaintiffs must prove that their use was continuous and uninterrupted. *Id.* ¶ 23.

> Although not synonymous, these two terms are interrelated parts of the same requirement. For the use to be continuous, it must take place with the same consistency that a normal owner of the claimed servitude would make, so long as that use is reasonably frequent. The requirement that the use be uninterrupted, however, refers to the actions of the prospective servient owner. If the owner takes any action that stops the claimants' use of the property, this will defeat the claim.

*Id.* (citations omitted).

{35} Defendants make no argument that Plaintiffs did not use the disputed access road with the same consistency that a normal owner would make or that Defendants took any action that interrupted Plaintiffs' use of the disputed access road. To the extent Defendants' reiteration of certain testimony from trial that Plaintiffs "only used the access" a limited frequency of times during various periods since 1979 is meant to be an argument regarding continuous use, Defendants fail to explain how such use is not as consistent as the use a normal owner would make, *id.* ¶ 23; and, in fact, as

25

Plaintiffs *are* "normal owners" of the property at the end of the disputed access, such arguments would likely be unavailing. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed.").

{36}     Nonetheless, with regard to the element regarding Plaintiffs' continuous and uninterrupted use for the prescriptive period, Defendants argue that "[t]here was no road prior to 2010 and thus there was no open and notorious use of the access prior to 2010"; and that the road was not usable for portions of the time due to the facts that the access was at times covered by brush, that there was no gravel road until 2010, and that Ms. Brannock did not begin building her home until 2010, so "there was no reason or way to access the property." Along those lines, Mr. Smith testified that an *aerial* photograph from 2006 shows that "it's pretty rough" on the access road in question. However, as set forth above, notwithstanding how the road may have appeared in aerial photographs from 2006 or Defendants' belief about whether the road had any use to Plaintiffs prior to Ms. Brannock's home being built in 2010, Plaintiffs variously testified that they did use the disputed access road for walking, hiking, driving, and other activities continuously for over forty years.

{37}     Again, as set forth above, Mr. Mowery testified that he used the disputed access road "a lot" since 1979 when he purchased acreage at the end of the road and,

26

during the thirty-one years from 1979 until 2010 when he sold the property to Ms. Brannock, he used the road as the access to the property and for hiking, driving, walking, or riding a motorcycle at least once a month. Similarly, Mrs. Mowery testified that she frequently walked on the disputed access road for over thirty years, mostly to take walks alone and with her children, and that, even after they moved, she continued to use the road once or twice a month to check on the house or simply walk the road. Ms. Brannock likewise testified that, since she purchased the property in 2009-2010, she has been using the road regularly, as it currently exists, by driving and walking down the road.

{38} Thus, substantial evidence exists to support the district court's finding by clear and convincing evidence that the use was "continued without effective interruption for the prescriptive period (of ten years)." *Algermissen*, 2003-NMSC-001, ¶¶ 10, 23. Again, although there may have been evidence presented to the contrary, "we will not reweigh the evidence nor substitute our judgment for that of the fact finder." *Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12; *see In re R.W.*, 1989-NMCA-008, ¶ 7 ("Even in a case involving issues that must be established by clear and convincing evidence, it is for the finder of fact, and not for reviewing courts, to weigh conflicting evidence and decide where the truth lies.").

{39} As we have concluded that there was substantial evidence presented at trial to support the district court's findings by clear and convincing evidence that Plaintiffs established each of the required elements for prescriptive easement, we likewise conclude that the district court did not err in concluding that Plaintiffs established a prescriptive easement over the disputed access road.

**D.    Plaintiffs' Request for Attorney Fees**

{40} Finally, we address Plaintiffs' request in their answer brief for attorney fees "incurred in this cause for having misstated the evidence and trial testimony to stop [this] Court's Proposed Summary Disposition." We initially note that Plaintiffs present no legal authority in support of their request for attorney fees. *See Curry*, 2014-NMCA-031, ¶ 28 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Nevertheless, our Supreme Court has clarified that "New Mexico adheres to the so-called American rule that, absent statutory or other authority, litigants are responsible for their own attorney's fees." *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 9, 127 N.M. 654, 986 P.2d 450 (internal quotation marks and citation omitted); *see also* Rule 12-403(B)(3) NMRA (allowing "reasonable attorney fees for services rendered on appeal in causes where the award of attorney fees is permitted by law"). However, "[c]ourts have the inherent power, independent of statute or rule, to award attorney fees to vindicate

their judicial authority and compensate the prevailing party for expenses incurred as a result of frivolous or vexatious litigation." *Landess v. Gardner Turf Grass, Inc.*, 2008-NMCA-159, ¶ 19, 145 N.M. 372, 198 P.3d 871 (alteration, internal quotation marks, and citation omitted).

{41} In their answer brief, Plaintiffs present various instances in which Defendants have made certain representations to this Court with the purported knowledge that such representations were not accurate. However, although we ultimately agree with Plaintiffs that the district court did not err in deciding that Plaintiffs established an easement by prescription, we do not find Defendants' position to be solely a result of "frivolous or vexatious litigation." *Id.*; *cf. Perez v. Gallegos*, 1974-NMSC-102, ¶ 8, 87 N.M. 161, 530 P.2d 1155 (noting that just because the appeal lacked merit did not necessarily mean that appeal was taken or pursued in bad faith solely for purposes of delay and harassment entitling the plaintiff to attorney fees). We therefore decline to award Plaintiffs attorney fees resulting from this appeal.

## III. CONCLUSION

{42} Concluding that the present case is not precluded by collateral estoppel or res judicata, we affirm the district court's judgment in favor of Plaintiffs and against Defendants.

29

{43}     IT IS SO ORDERED.

_____

MICHAEL D. BUSTAMANTE, Judge

**WE CONCUR:**

_____

**LINDA M. VANZI, Judge**

_____

**TIMOTHY L. GARCIA, Judge**